# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

TERRANCE L. CLAY,                :

    Plaintiff,                :

vs.                              :    CA 10-81-C

MICHAEL J. ASTRUE
Commissioner of Social Security, :

    Defendant.                :

## MEMORANDUM OPINION & ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disabled adult child's insurance benefits and supplemental security income (SSI). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); Doc. 17) Upon consideration of the administrative record ("R") (Doc. 13), Plaintiff's brief (Doc. 14), the Commissioner's brief (Doc. 16), and the arguments made by the parties at the October 20, 2010 Hearing, it is determined that the Commissioner's decision denying Plaintiff benefits should be reversed and remanded for

further proceedings not inconsistent with this decision.

## RELEVANT FACTUAL BACKGROUND

Plaintiff filed applications under Titles II and XVI of the Social Security Act (respectively, 42 U.S.C. §§ 401-33 & 1381-83c) in October 2007 (R. 122-28), in which he claims disability beginning on December 1, 1998. (R. 122.) In his disability report (R. 145-51), Plaintiff indicates that the bases for his disability are mental, behavioral, learning, and speech impairments. (R. 146.) Plaintiff's claims were initially denied on January 31, 2008. (*See* R. 66-79.) He then sought a hearing with an administrative law judge (the "ALJ"). (R. 80.) The hearing before the ALJ occurred on September 22, 2009. (*See* R. 46-65 [transcript of proceedings].) And the ALJ issued her decision finding Plaintiff not disabled on October 2, 2009. (R. 10-29.) The Appeals Council denied review on January 21, 2010 (R. 1-5), leading to this appeal.

Relevant to the appeal, the ALJ made the following findings:

> **3. The claimant has the following severe impairment: Mild mental retardation. (20 CFR 404.1520(c) and 416.920(c)).**
>
> **4. The medical and non-medical evidence, as summarized and discussed herein, has not established attention deficit hyperactivity disorder (ADHD) or receptive and expressive speech disorder as impairments that entailed significant work-related limitations of record for a continuous period of at least <u>12 months</u> during the period of adjudication. The medical evidence has not suggested significant work-related limitations of a 12 month duration arising therefrom, and no treating physician or other medical source has placed work restrictions on the claimant because of these conditions. Therefore, attention deficit hyperactivity disorder (ADHD) and receptive and expressive speech disorder are found to be "non-severe" for any <u>12 full months</u> during the relevant period of adjudication.**

> **5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

(*See* R. 15-23.)

The issue on appeal—as framed by Plaintiff—is whether:

> The Administrative Law Judge reversibly erred in failing to find that the Plaintiff meets Listing 12.05C, in light of Plaintiff's valid Full IQ score of 69 and a long-standing history of ADHD.

(Doc. 14, p. 1.) Regarding Plaintiff's ADHD and the second prong of Listing 12.05C, the ALJ in part stated:

> **There is no credible documentary evidence that the claimant has experienced marked inattention, impulsiveness, and hyperactivity for a period of 12 months during the relevant period under consideration nor is there any evidence that the claimant has any functional limitations that seriously interfere with or cause marked limitations in age appropriate communicative, social, or personal functioning or marked difficulties in maintaining concentration, persistence, or pace. The medical evidence of record also reflects that the claimant's ADHD has been shown to respond well to medication**
>
> . . .
>
> **The undersigned finds that, because there is no evidence that the claimant's ADHD causes more than "mild" limitation in the functional area of activities of daily living, social functioning, and concentration, persistence, and pace, and "no" episodes of decompensation which have been of extended duration, when the claimant is complaint with his medication, it is nonsevere. (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).**
>
> . . .
>
> **Although the claimant possesses the required IQ score of listing 12.05C, he does not satisfy the second prong of the listing section in that he does**

> **not possess a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant has not alleged, nor is there any evidence, that he possessed a medically determinable physical impairment. With respect to the claimant's ADHD, as noted above, this impairment is not a severe, functionally limiting impairment. With respect to the claimant's alleged expressive and receptive language disorder, as discussed above, this alleged disorder has not been established by evidence as a medically determinable impairment. In summary, the undersigned finds that the claimant possess no medically determinable severe physical or mental impairment.**

(R. 19, 21.)

## STANDARD OF REVIEW

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step, "the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And finally, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## **DISCUSSION**

Plaintiff argues that (1) intellectual testing shows that he has a full scale IQ between 60 and 70—which the ALJ confirms in her findings—and (2) his Attention Deficit Hyperactivity Disorder (ADHD) is a "severe" impairment, and contends that the ALJ misstates the standard for finding an impairment "severe," when she found that:

> [t]here is no credible documentary evidence that the claimant has experienced marked inattention, impulsiveness, and hyperactivity for a period of 12 months during the relevant period under consideration nor is there any evidence that the claimant has any functional limitations that seriously interfere with or cause marked limitations in age appropriate

5

communicative, social or personal functioning or marked difficulties in maintaining concentration, persistence, or pace.

(Doc. 14, p. 4 (quoting R. 19).) Plaintiff argues, without citation, that "[i]t is not necessary that the impairment cause 'marked' limitations"; "the impairment [need only be] more than a 'slight abnormality'" (*id.*), and Plaintiff's "long-standing history of ADHD" (*id*, p. 5) meets this requirement.

Plaintiff relies on the following evidence in the record:

- A teacher questionnaire (completed in November 2007) by Shelly M. Herbert at Fruitdale High School, which found that Plaintiff has very serious problems: (1) providing organized oral explanations and adequate descriptions; (2) expressing ideas in written form; (3) recalling and applying previously learned materials; (4) applying problem solving in class discussions; (5) paying attention when spoken to directly; sustaining attention during play/sports activities; (6) focusing long enough to finish assigned activity or task; (7) changing from one activity to another without causing disruption; (8) organizing his own things or school materials; (9) completing work accurately without mistakes; (10) working without distracting self or others; and (11) working at a reasonable pace/finishing on time. (R. 158-166.) *However*, Ms. Herbert also noted that Plaintiff's "medication makes a tremendous difference in his behavior and academic performance." (R. 162.)

- An evaluation by Carolyn O'Brien, Ph.D. (from January 2007), in which Dr. O'Brien, a clinical psychologist, diagnosed Plaintiff with ADHD, NOS, and noted that his prognosis was poor. (R. 247-253.) Dr. O'Brien, *however*, also noted that Plaintiff's mother told her that medication helped to control Plaintiff's "hyperactive" symptoms. (R. 248.)

- An evaluation by John W. Davis, Ph.D. (from January 2008), in which Dr. Davis, also a clinical psychologist, also diagnosed Plaintiff with ADHD, NOS. Dr. Davis also noted, *however*, that Plaintiff's ADHD was in partial remission, his overall prognosis was fair, and that he "is stable on ADHD medication." (R. 266-271.)

- An evaluation by Michael S. Rosenbaum, Ph.D. (from August 2009), in which Dr. Rosenbaum, also a clinical psychologist, also diagnosed Plaintiff with ADHD,

6

NOS, and noted that it appeared that Plaintiff's "low level of intellectual and academic functioning will have a limiting effect on the types of work he can perform." (R. 291-298.) ***However***, Dr. Rosenbaum concluded that if Plaintiff took his medication for ADHD, the impact of his inattention and behavioral difficulties likely would be reduced. (R. 294.)

The Commissioner contends that the ALJ's finding is proper, arguing that it is supported by the following evidence from the record:

- No treating physician or other medical source placed work restrictions on Plaintiff because of ADHD (or an alleged receptive and expressive disorder). (See R. 19.)

- Plaintiff's ADHD responded well to medication. (R. at 19, 235-240, 248, 162, 294.)

- Plaintiff had not taken his medication for ADHD since he dropped out of school in 2008, and there was no evidence that he had received treatment for ADHD from the mental health center since April 2007. (R. 19.)

## **ANALYSIS**

To qualify under Listing 12.05C, a claimant must meet the capsule definition of mental retardation (deficits in adaptive functioning prior to age 22), and have (1) a valid verbal, performance, or full scale IQ of 60-70; and (2) a physical or other mental impairment imposing additional and significant work-related limitations of function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

> The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22," as well as a "valid verbal, performance, or full scale IQ of 60 through 70 ***and** a physical or **other** mental impairment imposing an additional and significant work-related limitation of function*." §§ 12.00A, 12.05, 12.05C.

7

*Grant v. Astrue*, 255 Fed. Appx. 374, 374 (11th Cir. 2007) (per curiam) (emphasis added).

Listing 12.05C's second-prong requirement of "a physical or other mental impairment imposing additional and significant work-related limitation of functions" means that the other impairment is a "severe" impairment as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The impairment also must meet the 12 month duration requirement under the Act. *See id.*, §§ 404.1509, 416.909 (an impairment must be severe for a continuous period of at least 12 months).

When, as here, a claimant attempts to meet the second prong of Listing 12.05C by demonstrating that a mental impairment imposes an additional and significant work-related limitation of function,

> the Regulations direct the use of the psychiatric review technique. *See* 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied by the psychiatric review technique form ("PRTF") and is further described in the introduction to section 12.00 of the listing of impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A). In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listing of impairments. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).
>
> Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in "paragraph B" of the

listings: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C). The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C). The fourth is rated using a four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d). The four broad functional areas "are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

*Clark v. Astrue*, No. 3:09-cv-302-J-JRK, 2010 WL 3023672, at *3 (M.D. Fla. July 29, 2010) (footnotes omitted).

"The regulation requires that the ALJ document application of this technique in the written decision," *Volley v. Astrue*, Civil Action No. 1:07-CV-0138-AJB, 2008 WL 822192, at *19 (N.D. Ga. Mar. 24, 2008) (citing 20 C.F.R. § 404.1520a(e)(2)), providing:

At the . . . administrative law judge . . . level[ ] in claims adjudicated under the procedures in part 405 of this chapter, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in *each* of the functional areas described in paragraph (c) of this section.

9

20 C.F.R. § 404.1520(e)(2) (emphasis added).

Although Plaintiff does not raise the issue in his appeal, it is clear from this Court's independent review of the ALJ's decision that she did not document application of the psychiatric review technique in her written decision. (*See* R. 13-29.) The record contains two completed PRTFs—one completed on January 29, 2008 by M. Hope Jackson, Ph.D. (R. 272-285) and one completed on August 31, 2009 by Michael S. Rosenbaum, Ph.D. (R. 291-298). Both professionals rated Plaintiff as mild in the first broad functional area, moderate in the second and third broad functional areas, and found no episodes of decompensation in the fourth. (*See* R. 282, 296.) In her decision, the ALJ, however, finds that Plaintiff's ADHD is nonsevere because she finds "no evidence that the ADHD causes more than 'mild' limitation in the [first, second, and third] functional area[s] of activities of daily living, social functioning, and concentration, persistence, and pace, and 'no' episodes of decompensation which have been of extended duration, when the claimant is complaint with his medication." (R. 19 (citing 20 C.F.R. § 404.1520a(d)(1) & 416.920a(d)(1)).) Thus, the ALJ's finding—although purportedly grounded solely on evidence in the record—appears to be inconsistent with at least some of that evidence. (*Compare* R. 282 & 296 *with* R. 19.) While the ALJ may assign weight, or chose to reject, certain professionals' opinions, *see, e.g., Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), without the benefit of an ALJ-completed PRTF—or incorporation of its mode of analysis into the ALJ's decision—this Court is without the benefit of the ALJ's own analysis of the evidence to confirm that all relevant

evidence was considered, and accordingly, this Court cannot conclude that the ALJ's decision "is supported by substantial evidence." *Davison*, 370 Fed. Appx. at 996; *see, e.g., Wilson v. Astrue*, No. 4:07-CV-148-FL, 2008 WL 2019650, at *9 (E.D.N.C. May 9, 2008) (in case where claimant believed he met 12.05C Listing, court noted that "the regulations require the application of the special technique at each level of the administrative review process when a claimant has an alleged mental impairment," and where "this necessary explanation is lacking from the ALJ's opinion, this Court cannot conclude that the ALJ analyzed all relevant evidence, and thus cannot conclude that the ALJ's decision is supported by substantial evidence") (citations omitted).

"[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions[;] [f]ailure to do so requires remand." *Moore v. Barnhart*, 405 F.3d at 1214; *see Ehrisman v. Astrue*, 377 Fed. Appx. 917, 919-20 (11th Cir. 2010) ("The record shows that while considering Ehrisman's depression, the ALJ properly employed the four PRTF functional limitation categories and rendered a finding about the degree of limitation as to each category. . . . The ALJ's decision indicates that he appropriately incorporated the PRTF mode of analysis into his findings and conclusions, as required by the Social Security regulations. Accordingly, we find no error." (footnote omitted)); *Clark*, 2010 WL 3023672, at *3-4 ("Here, the ALJ rated the four broad functional areas pursuant to the psychiatric review technique. Tr. at 15-16. . . . In sum, the ALJ found that Plaintiff

11

has no more than mild limitations in the first three functional areas and no episodes of decompensation in the fourth. For the foregoing reasons, these findings are supported by substantial evidence.") As required by *Moore*, this Court has consistently remanded matters for further proceedings where an ALJ fails to append to his or her decision a PRTF, or incorporate into his or her decision the mode of analysis set forth in the regulations at §§ 404.1520a and 416.920a. *See, e.g., Huddleston v. Astrue*, No. CA 07-0757-C, 2008 WL 2225697, at *3 n.2 (S.D. Ala. May 29, 2008); *Pettaway v. Astrue*, No. CA 08-0171-C, 2008 WL 5111175, at * 4 n.5 (S.D. Ala. Dec. 3, 2008).

This requirement is more than mere form over function. For example, in *Volley*, the district court rejected the Commissioner's argument "that the ALJ satisfied *Moore*'s requirements by incorporating the State agency psychologists' evaluation of the four factors into the decision." 2008 WL 822192, at *18. The district court, citing persuasive Ninth Circuit authority, explained:

> In this case, the ALJ's obscure reference to PRTFs completed earlier in the administrative proceedings is plainly insufficient. One court has rejected the harmless error argument in relation to the application of the PRTF requirement as contrary to the purpose of the regulation. As pointed out by the Ninth Circuit in *Selassie v. Barnhart*, 203 Fed. Appx. 174 (9th Cir. 2006), one of the stated purposes for the "special technique" is to help the Social Security Administration "'[o]rganize and present [its] findings in a clear, concise, and consistent manner.'" *Selassie*, 203 Fed. Appx. at 176 (citing 20 C.F.R. § 404.1520a(a)(3)). The *Selassie* Court concluded that "[t]he specific documentation requirements . . . are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements." *Id*. Thus, the court rejected the Commissioner's argument that the ALJ's failure to document the application of the special technique in the decision was harmless error even where the ALJ would [have] reached the same result had he followed the

12

requirements of the regulation. *Id.*

*Id.* at *19. Accordingly, this Court is required to remand this matter to the ALJ, so that she may complete a PRTF, or incorporate its mode of analysis into her findings and conclusions. *See Moore*, 405 F.3d at 1214.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the 4th day of November, 2010.

s/ WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**